NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| GASTON LEVESQUE, et al., | |
| Plaintiff, | |
| | Civil Action No. 08-632 (JAG) |
| v. | |
| | **OPINION** |
| BECTON, DICKENSON and COMPANY, | |
| Defendant. | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss Plaintiffs'[1] complaint, pursuant to FED. R. CIV. P. 12(b)(6), filed by defendant Becton, Dickenson and Company ("Defendant"). For the reasons set forth below, this Court finds that Plaintiffs' complaint should be dismissed, without prejudice.

**Facts**

In 1997, Levesque established ITI for the purpose of manufacturing and distributing ophthalmic devices and products. (Am. Compl. ¶ 5.) In 2000, Defendant and Levesque, an engineer, negotiated the sale of a keratome, an ophthalmic device developed by Levesque. (Id.) A keratome is an instrument used in ophthalmic surgery. (Id. at ¶ 6.) The purchase price set

---

[1] Gaston Levesque ("Levesque") and Insight Technologies Instruments, LLC ("ITI"), a limited liability corporation established by Levesque in 1997, collectively are the plaintiffs ("Plaintiffs") in this action.

1

forth in the sales agreement was divided into two main parts: the "Initial Purchase Price" of $2.55 million, to be paid at the closing, and the "Subsequent Purchase Price" of $2.45 million, to be paid based on the achievement of eight "milestones," which were defined in the sales agreement. (Id. at ¶ 12.) Six of the eight milestones were met, and the associated payments made. (Id. at ¶ 16.) The remaining two milestones have not been met, and, therefore, the associated payments have not been made. (Id. at ¶¶ 16-18.)

Plaintiffs' complaint contains seven counts:

1. an allegation that Defendant breached its "contractual obligation to assist Plaintiffs in meeting the milestones defined in the Agreement;"

2. Defendant, through its affirmative actions, "rendered Plaintiffs' fulfillment of the agreed upon milestones impossible and thus deprived Plaintiffs of their opportunity to earn the outstanding milestone payments;"

3. Defendant "secured benefits to which it was not entitled by satisfaction of its obligations to Plaintiffs and thus has been unjustly enriched;"

4. Defendant "fraudulently induced Plaintiffs to enter into the Agreement;"

5. Defendant breached the fiduciary duty of loyalty that arose between it and Plaintiffs;

6. Defendant "breached its obligation to Plaintiff of good faith and fair dealing;" and

7. Defendant's actions "constitute unfair or deceptive actions or practices as that term is defined in Connecticut General Statutes, § 42-110a, et seq. [sic]."

**Legal Standard – 12(b)(6) Motion to Dismiss**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the

decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1357 at 340 (2d ed. 1990)).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has

been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).  Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment.[2]  FED. R. CIV. P. 12(d).

---

[2] Although the Declaration of Gaston Levesque, attached to Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, contains allegations that would bolster Plaintiffs' complaint, the Declaration was neither attached to, nor referenced in, the Amended Complaint. As such, this Court will not consider its contents as to do so would convert this motion to dismiss into a motion for summary judgment.

**1.     Breach of contract**

"To prevail on a breach of contract claim, the plaintiffs must show '(1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages.'" RWP Consol., L.P. v. Salvatore, 460 F. Supp. 2d 351, 355 (D. Conn. 2006) (quoting Alliance Group Serv., Inc. v. Grassi & Co., 406 F. Supp. 2d 157, 163 (D. Conn. 2005)).[3]

Here, Plaintiffs allege that no payments have been received for two of the milestones set forth in the agreement, as part of the Subsequent Purchase Price. (Am. Compl. ¶ 16.) These two payments were required to be made when the associated milestones were reached. Plaintiffs allege that neither of the outstanding two milestones have been met. (Id. at ¶ 18.) As a result, Plaintiffs fail to demonstrate a breach of contract since the condition precedent for each of the two payments to Levesque had not been met.

To overcome this problem, Plaintiffs further allege that the failure to meet the two milestones was due in part to Defendant's "failure to maintain an adequate sales effort." (Id. at ¶ 19.) Defendant's "failure to take advantage of the contract with Santen."[4] (id. at ¶ 20) also contributed, according to Plaintiffs, to the failure to meet the milestones. These two alleged failures may very well have contributed to the inability to meet the milestone goals; however, nowhere in the agreement is there a requirement that Defendant maintain a sales force, nor is

---

[3] The parties agree that the applicable law is the law of Connecticut.

[4] One of the assets conveyed as part of the sale were rights under a distribution agreement between ITI and Santen Pharmaceutical Co. ("Santen"). That distribution agreement included a commitment from Santen to purchase 74 keratome systems over a period of four years. (Am. Compl. ¶ 11.)

there a requirement that Defendant take advantage of the contract with Santen. Defendant was not required by any specific provision in the agreement to perform as Plaintiffs suggest. As such, neither of these deficiencies demonstrates a breach of contract by Defendant. This count of the Amended Complaint will be dismissed.

**2. Impossibility**

The second count of the Amended Complaint alleges that Defendant's affirmative actions "rendered Plaintiffs' fulfillment of the agreed upon milestones impossible and thus deprived Plaintiffs of their opportunity to earn the outstanding milestone payments." (Am. Compl. ¶ 29.) What claim Plaintiffs wish to make in this count is unclear. Impossibility is a defense to a claim of breach of contract, rather than the basis for an allegation of a breach. 30 Richard A. Lord, Williston on Contracts § 77:6 (4th ed.) ("In a contract action, impossibility or impracticability of performing a contract should be raised as an affirmative defense in the first responsive pleading."). Impossibility of performance of a contract is "[t]he principle that a party may be released from a contract on the ground that uncontrollable circumstances have rendered performance impossible." Black's Law Dictionary 772 (8th ed. 2004); see also Straus v. Kazemekas, 124 A. 234, 238 (Conn. 1924).

To the extent Plaintiff seeks to allege a cause of action of impossibility, that claim must be dismissed with prejudice.

**3. Unjust enrichment**

"'Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. In order for the plaintiff to recover under the doctrine, it must be shown that the defendants were benefited [sic], that the benefit was unjust in that it was not paid for by

the defendants, and that the failure of payment operated to the detriment of the plaintiff.'" Burns v. Koellmer, 527 A.2d 1210, 1215 (Conn. App. 1987) (quoting A & C Corporation v. Pernaselci, supra, 265, 477 A.2d 166)). "'[A]n express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter.'" Meaney v. Connecticut Hospital Assn., Inc., 735 A.2d 813, 823 (Conn. 1999) (quoting 1 E. Farnsworth, Contracts (2d Ed. 1998) § 2.20)).

The claim that Defendant has been unjustly enriched as a result of Plaintiffs not having the opportunity to reach the enumerated milestones is inherently flawed. Here, Defendant failed to derive any benefit for which Plaintiffs were not duly compensated. As Plaintiffs performed, their coffers were filled as per the Agreement when milestones were met. There is no valid assertion in the Amended Complaint of unjustness. Plaintiffs' assertion also falls short because there is no allegation Defendant failed to pay for a benefit received.

**4.    Fraudulent inducement**

In pleading fraud, FED. R. CIV. P. 9(b) establishes a heightened pleading standard by requiring that "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1428 (3d Cir. 1997) (citations omitted). Rule 9(b) "requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quoting DiLeo v. Ernst & Young,

901 F.2d 624, 627 (7th Cir. 1990)). "Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Nice Sys., 135 F. Supp. 2d 551, 577 (D.N.J. 2001)). "[I]n applying Rule 9(b), courts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their fraud.'" Id. (quoting Burlington Coat, 114 F.3d at 1418). "Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed." Id.

"'Under the common law . . . it is well settled that the essential elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . All of these ingredients must be found to exist.'" Capp Indus., Inc. v. Schoenberg, 932 A.2d 453, 464 (Conn. App. Ct. 2007) (quoting Duplissie v. Devino, 902 A.2d 30, 38 (Conn. App. Ct. 2006)).

Here, Plaintiffs allege that Defendant represented that it would assist Plaintiffs in "meeting all of the milestones and would give Plaintiffs the appropriate opportunity to do so." (Am. Compl. ¶ 34.) Plaintiffs also allege that they "relied on these representations in deciding to enter into the Agreement." (Id. at ¶ 35.) Plaintiffs further allege that "at the time of the making of those representations [Defendant] knew them to be false." (Id. at ¶ 36.)

Plaintiffs fail to meet the essential requirements of pleading fraud. There is no specificity in Plaintiffs' pleading. Plaintiffs merely state that Defendant made representations to Plaintiffs

8

that it would assist Plaintiffs in reaching all of the milestones. There is no who, what, where, or how to Plaintiffs' allegations. Further, Plaintiffs aver that Defendant knew these representations to be false. This bald statement defies logic given Defendant's substantial compliance with meeting six of the eight milestones listed in the agreement. This Court cannot require Defendant to attempt to defend a claim with no specificity regarding representations and then discern how Defendant knew such unspecified representations to be false. Plaintiffs do not meet the prerequisites of pleading fraud. This claim cannot survive dismissal.

**5. Breach of fiduciary duty**

"It is well settled that '[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other.'" Hi-Ho Tower v. Com-Tronics, Inc., 761 A.2d 1268, 1278 (Conn. 2000) (quoting Konover Dev. Corp. v. Zeller, 635 A.2d 798, 805 (Conn. 1994)); see also Fenn v. Yale Univ., 283 F. Supp. 2d 615, 631 (D. Conn. 2003). "The Supreme Court of Connecticut has 'specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other.'" Fenn, 283 F. Supp. 2d at 632 (quoting Alaimo v. Royer, 448 A.2d 207, 209 (1982) (citations and internal quotations omitted)). However, "[i]n the seminal cases in which [the Connecticut Supreme Court] has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." Hi-Ho Tower, 761 A.2d at 1278. "In the cases in which [the Connecticut Supreme

Court] has, as a matter of law, refused to recognize a fiduciary relationship, the parties were either dealing at arm's length, thereby lacking a relationship of dominance and dependence, or the parties were not engaged in a relationship of special trust and confidence." Id. at 1279.

Plaintiffs allege that they "relied upon, and were totally dependent upon, [Defendant] to assist them in meeting the milestones and to make their fulfillment possible." (Am. Compl. ¶ 40.) "Plaintiffs then entrusted their welfare to [Defendant] and relied upon [Defendant] to honor that responsibility." (Id. at ¶ 41.) Nowhere in the Amended Complaint do Plaintiffs allege that Defendant was in a dominant position or that Defendant had superior knowledge, skill or expertise with respect to the manufacture and sale of the keratome. To the contrary, Plaintiff alleges that Defendant "had no presence in the refractive surgery arena" at the time negotiations began. (Id. at ¶ 8.)

The situation here is similar to that in Fenn v. Yale. In that case, the plaintiff, a professor at Yale who had developed an invention relating to mass spectrometry, was found to be in a dominant position relative to the University. Pursuant to the provisions of Yale's patent policy, faculty members were required to inform the University about any potentially patentable discoveries. While plaintiff did inform Yale of his discovery, he did not disclose its significance, instead downplaying its importance so that Yale would be discouraged from applying for a patent, thus allowing him to apply for a patent himself.

The court found that plaintiff "knew more about the value and patentability of inventions he developed than anyone else, and Yale necessarily sought out and reasonably relied on his expertise in evaluating such inventions." Fenn, 283 F. Supp. 2d at 632. As a result, plaintiff "owed Yale the duties of a fiduciary." Id.

10

Just as the professor in Fenn knew more about his invention than Yale, so too do Plaintiffs here know more about the keratome than Defendant. Simply making a bald assertion that Plaintiffs relied upon Defendant does not establish a basis for an allegation demonstrating the creation of a fiduciary duty. Defendant's lack of knowledge and experience in the area of refractive surgery is evident but as a matter of pleading, Plaintiffs fail to meet the requirement of showing, as they must, that Defendant was in the dominant position. Instead, Plaintiff's Amended Complaint suggests an arm's length transaction in which two contracting parties brought complimentary assets to the proverbial table. No fiduciary relationship is alleged. Plaintiffs' claim must fail.

**6.   Breach of good faith and fair dealing**

"'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" Warner v. Konover, 553 A.2d 1138, 1140 (Conn. 1989) (quoting Central New Haven Dev. Corp. v. La Crepe, Inc., 413 A.2d 840, 843 (Conn. 1979)). "'To constitute a breach of [the duty of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. Bad faith means more than mere negligence; it involves a dishonest purpose.'" Lieberman v. Emigrant Mortgage Co., 436 F. Supp. 2d 357, 367 (D. Conn. 2006) (quoting Collins v. Anthem Health Plans, Inc., 880 A.2d 106, 119-20 (Conn. 2005)). "'Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Id. (quoting Habetz v. Condon, 618 A.2d 501, 504

11

(Conn. 1992)).

Under Connecticut law, the breach of the duty of good faith and fair dealing requires affirmative allegations of bad faith. Plaintiffs' allegations that Defendant failed "to maintain an adequate sales effort" (Am. Compl. ¶ 19) and failed "to take advantage of the contract with Santen" (id. at ¶ 20) do not rise to the level of alleging a dishonest purpose, nor do these allegations support an inference that Defendant engaged in an effort to mislead or deceive Plaintiffs. The Lieberman court requires a specific assertion of bad faith that implies fraud or some other type of deceit. There is no allegation that reaches this level. Also, Plaintiffs do not allege the Agreement had language disallowing Defendant's actions. As a result, this count of the Amended Complaint will be dismissed.

**7.     Violation of Connecticut Unfair Trade Practices Act ("CUTPA")**

Conn. Gen. Stat. § 42-110b(a) provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "To determine whether an [sic] practice violates CUTPA, courts examine these factors: '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.'" Lieberman., 436 F. Supp. 2d at 367 (quoting Sanghavi v. Paul Revere Life Ins. Co., 572 A.2d 307, 311 (Conn. 1990)). "'[T]o be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an 'ascertainable loss' due to a CUTPA violation'." Id. (quoting Collins v. Anthem, 880

A.2d 106, 120 (Conn. 2005)).

Plaintiffs' attempt to state a claim under CUTPA falls woefully short. This arrangement, as reflected in the parties' agreement, is not unique within the intellectual property or medical device community. Plaintiffs had a solid medical device that they had neither the capital nor the expertise to exploit. Defendant bought that device and over the course of time, Plaintiffs and Defendant worked cooperatively, pursuant to their agreement, to achieve the goal of maximizing the sales of keratomes, which in turn led to an ability to earn Plaintiffs more income through the achievement of milestones, pursuant to their agreement.

There are three factors to consider whether Defendant has overstepped the bounds of CUTPA. First, Plaintiffs make no allegation of a violation of public policy in the Amended Complaint; nor is there any suggestion that this standard business arrangement was, or could be argued to be, against public policy. Second, there can be no argument discerned from the Amended Complaint that remotely resembles support for the notion that this agreement, or the manner in which Defendant conducted itself in relation to the agreement, amounted to conduct that could be deemed immoral, unethical, oppressive, or unscrupulous. Lastly, Plaintiffs are not consumers and allege no harm on behalf of any consumers. Therefore, this count will be dismissed.

**Conclusion**

Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted. The Amended Complaint shall be dismissed with prejudice as to Count 2. As to Counts 1, 3, 4, 5, 6, and 7, the Amended Complaint shall be dismissed without prejudice, and Plaintiffs shall be given thirty (30) days to submit an amended complaint, should they so choose.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  February 3, 2009